Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | December 28, 2023 |
| To: | LAW OFFICES OF J. PRICE MCNAMARA<br>10455 JEFFERSON HIGHWAY<br>SUITE130<br>BATON ROUGE LA 70809 |
| Attn: | |
| Fax: | (225) 201-8313 |
| From: | Jerronda King<br>Claims Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages (Including Cover): | 11 |
| RE: | Claim #: 11059701<br>Claimant: Trina Simmons<br><br>Walmart, Inc. |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

December 28, 2023

Law Offices of J. Price McNamara
10455 JEFFERSON HIGHWAY
SUITE130
BATON ROUGE, LA 70809

RE: Long Term Disability (LTD) Benefits
Walmart, Inc.
Claim #: 11059701
Claimant: Trina Simmons

To Whom It May Concern:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Walmart, Inc.'s Group Disability Policy. We are writing in reference to your claim for LTD benefits under the Policy on behalf of Trina Simmons.

We have completed our review of your request for reconsideration of your claim for Long Term Disability (LTD) benefits. Based on the information contained in the claim file we are unable to alter the determination to deny further benefits beyond March 8, 2023.

**Initial Claim Decision**

Ms. Simmons submitted a claim for your absence from work as of August 31, 2020. Her LTD benefits began on March 9, 2021, therefore the change in definition of disability occurred on March 9, 2023 and to receive benefits beyond 24 months she must be disabled from any occupation as defined in the Policy. Benefits beyond March 8, 2023 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated April 15, 2023. She was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, she was advised to submit the following information: In your request for review please include the following documentation: The reasons you feel the decision to deny LTD coverage is incorrect; Medical documentation that supports your inability to perform the duties of **any occupation** on a full time basis. This information should include office treatment notes, test results, imaging, or any medical consultations; as well as any additional comments, documents, records, or other information, including any Social Security decision you may have received that you feel will support your claim. You should also provide any additional comments, documents, records, or other

information which you would like considered, including any Social Security decision you may have received that you feel will support your claim.

**Appeal**

Correspondence was received from your office dated October 9, 2023 and October 12, 2023 requesting an extension through and including November 13, 2023. You asked that no final decision is made until the office notifies of a complete appeal submission.

Correspondence was received from your office dated October 12, 2023 noting you were representing Ms. Simmons for her claim. Your letter requested an extension to November 13, 2023 to gather and submit additional evidence. You letter noted the evidence provided along with prior evidence submitted clearly establishes disability from her own or any occupation. You noted that the "subjective element of pain is an important factor to be considered in determining disability".

> *Labs and mammogram information was provided*
>
> *Imaging of the hips and pelvis from February 3, 2023 noted no acute fractures nor dislocations were demonstrated. Bilateral hip osteophyte formation and some degenerative changes of the right hip were noted.*
>
> *Lumbar MRI dated February 3, 2023 noted no detrimental interval change since prior examination. She and normal alignment, vertebral body heights, marrow signal intensity and disc spaces. She had moderate facet arthropathy at L4-5 and L5-S1 with no significant central or neural foraminal stenosis and no focal disc herniation.*
>
> *CT scan noted no high-grade stenosis, large vessel occlusion or aneurysm in the aorta, no finding to suggest renal artery stenosis, hepatomegaly and background parenchymal findings of steatosis.*
>
> *She had a normal bilateral lower extremity venous ultrasound with no evidence of deep vein thrombosis on September 29, 2022*
>
> *Cervical MRI from September 9, 2022 noted reversal of the cervical spine lordosis, no significant spinal canal or neuroforaminal compromise, T4 vertebral body lesion, old right cerebellar lobe infarcts, and mild lymphoproliferative process.*
>
> *MRI of the lumbar spine dated June 23, 2022 noted facet arthropathy L4-5 and L5-S1, otherwise normal lumbar spine.*
>
> *MRI of the left foot dated April 22, 2021 noted an unremarkable examination.*
>
> *CT of the abdomen and pelvis dated June 2, 2020 noted punctate non-obstructing bilateral calyceal nephrolithiasis, no evidence of obstructive uropathy or radiopaque ureteral calculus, under distended urinary bladder, colonic diverticulosis, subtotal hysterectomy.*

*Progress notes were received from **I**. Robledo Vega, rheumatology, dated April 10, 2023 and May 4, 2023. Ms. Simmons was seen reporting plantar fasciitis and development of edema and pain after several procedures. She also reported burning, claw grabbing the foot, rubbery feeling, and some color change. She also reported tendon rupture to the same foot and diminished quality of life. She was documented to have bilateral knee pain with imaging showing mild osteoarthritis. She was noted to have multiple joint pain with elevated CRP. She noted left ankle and foot pain with neuropathy, low back pain and hip stiffness. She noted sleep disturbance due to constantly urinating. Her examination noted she was in no distress with edema noted in her left ankle and foot with darker color compared to the right and with some tenderness. She had normal strength and sensation.*

*Ms. Simmons was seen October 13, 2022 and December 28, 2022 by Dr. H. Roach for left leg pain all the way up to her left shoulder. Her edema was improved on Furosemide. She was noted have continued pain in the left proximal leg and hip with rotation. Her examination noted she was in no acute distress with normal heart rate and rhythm, no overt physical examination findings on the left or right leg with some tenderness noted along the left hip and left medial and lateral plica areas, normal neurological examination, good arterial perfusion, trace right leg edema, 1-2 left lower leg and foot edema, no venous stasis dermatitis, ulcers, or rashes. Testing revealed normal ankle brachial ratios bilaterally.*

*A follow up note was received from C Tran, PA-C dated April 3, 2023. She presented for her six month follow up. She was noted to be stable during the appointment. Her examination noted normal cardiovascular and respiratory examinations, normal range of motion, and no focal neurological deficits. Her assessment noted bilateral leg pain, lower extremity edema, obesity, history of seizures, hypertension, and peripheral neuropathic pain. Ms. Simmons was noted to be stable and advised to continue diuretic therapy and visit with rheumatology for testing.*

*Medical documentation was received from Dr. Edward Lang, DPM through May 30, 2023 noting Ms. Simmons was seen for treatment of left ruptured AFT. She reported pain in the left heel, top of the left foot and medial aspect of the left foot and ankle during activity. She was taking Lyrica as prescribed. She reported drowsiness and tiredness. Her reported pain level was a ten. She was referred to neurology for management of neuropathic symptoms. She reported difficulty walking long distances. Her examination noted normal muscle strength and range of motion of the lower extremities, rectus foot type noted bilaterally, non-painful flexible flexion deformity, moderate pain with palpation of the medial band of the left foot plantar fascia with mild pain along the medial band of the right foot plantar fascia. Her joints had normal range of motion. As of May 2023 she was seen for a follow up reporting her pain was a zero an by the end of the day along the lateral side, she*

*reported a decrease in swelling. She was taking Lyrica as prescribed and applying Urea cream. She was also taking Vitamin D3. Her examination noted 1+ non-pitting edema in the left leg and 1+ non-pitting edema of the right leg. She had diminished pulse. Her lower muscle strength and range of motion was equal and symmetrical. She had a rectus foot type bilaterally and moderate pain with palpation along the median band of the left foot plantar fascia, mild pain with palpation along the medial band of the right foot plantar fascia. She had normal range of motion. Her sensory testing was normal. She was to follow up in four months.*

*Labs, imaging, and diagnostics were received.*

*Her knee imaging from October 2022 noted minimal compartment joint space loss bilaterally without fracture, dislocation, or bony erosion. Osseous spur was noted at the superior aspect of the patella bilaterally.*

*Colonoscopy report was receiving noting a polyp sigmoid*

*Progress note was received from Ryan Charles dated March 30, 2023 noting impression of bilateral knee mild osteoarthritis and multiple joint pain, possible rheumatologic diagnosis. Treatment as needed was documented. It was recommended that she see rheumatology. She was noted to have a long history of bilateral knee pain, left worse than right with mild age-appropriate radiographic changes. She was also noted to have hip arthralgias and shoulder issues with complaints of back pain. There was noted to be "no focal unclear etiologies for this multiple joint pain". Her examination noted she was in no acute distress with no joint effusion, tenderness over the medial joint and lateral joint line, no crepitus with passive knee range of motion, passive range of motion 0 extension and 130 degrees flexion, no pain with manipulation of the patella, stable varus and valgus stress test, no pain with rotation of the hip, and normal strength and sensation.*

*Progress note was received from Dr. Troy Drewitz dated March 10, 2023. Ms. Simmons was seen for a well women examination. She presented with no complaints. Her examination noted she was in no distress, alert and oriented. She had a normal musculoskeletal examination and no neurological deficits. Her psychiatric examination noted she had normal mood, affect, behavior, judgment, and thought content.*

*Progress note was received from Stacy Luna, PA-C dated January 25, 2023. Ms. Simmons was seen for pain in the left knee, left greater than right, and worse with prolonged sitting. It was noted that she had locking, catching and intermittent numbness. She was noted to be seeing vascular and neurology. She takes Lyrica, and Motrin, Naproxen or Mobic as needed. She was also noted to have chronic left foot pain. Her examination of the right knee noted negative straight leg raise, trace knee effusion, no tenderness, and full range of motion with negative testing, absent crepitation and normal motor strength and sensation. Examination of the left knee*

*noted tenderness, trace knee effusion, full range of motion, negative testing and normal strength and sensation. Her diagnoses included osteoarthritis of the left and right knee. She was instructed to continue her medications and wear a hinged knee brace.*

*PT progress notes were received from October 2022 noting reports of increased left knee / leg pain.*

*Progress note was received from Samuel Ferris dated October 24, 2022. Ms. Simmons presented for follow up for mitral valve prolapse, palpitations, syncope and CVA. She had a normal myocardial perfusion scan, normal echocardiogram with an ejection fraction of 65%, negative event monitor on June 26, 2019. She denied chest pain or shortness of breath and she noted her palpitations had improved and her blood pressure was controlled. Her examination noted normal heart rate and rhythm, intact pulses, normal heart sounds, normal pulmonary effort, normal breath sounds, normal abdomen, normal range of motion and no neurological deficits. Her assessment included hypertension, dyspnea on exertion, mitral valve prolapse, peripheral vascular disease, atypical chest pain, and syncope. She was instructed to continue her medication and follow up in six months.*

*Progress note was received from Dr. Howard Hirsch dated October 11, 2022 noting Ms. Simmons was seen for a consultation for bilateral knee pain and left leg pain. Examination of her knees noted trace effusion, full range of motion, no tenderness, normal ligament examination, no crepitation, normal strength, and normal sensation. Her diagnosis was primary osteoarthritis in both knees.*

Correspondence was sent to your office dated October 19, 2023 noting your intent to appeal. The letter indicated that Ms. Simmons deadline date to appeal was November 13, 2023.

Additional documentation was received along with a letter dated November 3, 2023. The following documentation was received for review and consideration.

*Verification of Trina Brown Simmons dated November 2, 2023*

*Affidavit was received from Trina Brown-Simmons noting disability due to plantar fascial fibromatosis, left foot pain, localized edema, Achilles tendinitis of the left leg, xerosis cutis, neuropathic pain, cervical radiculopathy, lumbar region radiculopathy, and rheumatoid arthritis. Ms. Simmons noted she cannot sit for longer than 15 minutes before having to change positions as sitting causes pain and stiffness in her shoulders. She rated her pain an eight to nine. She also noted problems standing for longer than 10-15 minutes due to pain in the foot, ankle, and lower back. She noted she could walk short distances due to painful foot, ankle, lower back and hips. She also indicated that she requires assistance with completing activities of daily living.*

*Affidavits were received from Alvin Thomas, Treyshunna Webb, Chrishute Simmons, Darlene Brown and Leslie Allen*

**Initial Evaluation**

On March 22, 2021 Ms. Simmons reported pain in the left foot due to planar fasciitis. She indicated that she was initially given a cast twice but her foot did not heal. She had surgery on December 22, 2020 and she was supposed to return to work February 2021. She reported attending physical therapy. She reported seeing a provider, Dr. Lang, for second opinion and she was advised that her surgery was done incorrectly. She indicated that she would not be returning to Dr. Hudson or Dr. Elliott. She noted her foot was swelling and she was unable to wear a foot or slipper.

On May 25, 2021, Ms. Simmons reported having surgery on April 23, 2021 by Dr. Lang. She reported the surgery was not working. She noted continued foot swelling and a knot on the side of the foot.

A Disability Nurse Consultant review was completed February 11, 2022 noting Ms. Simmons had a history of low back pain, seizures (not treating), depression, and anxiety. She separated from work due to pain in the left foot with diagnosis of plantar fasciitis. She was status post endoscopic plantar fasciotomy by Dr. Lang, DPM, in April 2021. Her initial foot surgery was in December 2020. She continued to have pain despite surgery and she was treated with immobilization in boot, compression socks, ankle brace, and medications. Supported restrictions and limitations included no lifting, pushing, or pulling greater than 20 pounds, no climbing, crawling, squatting, or kneeling, no more than occasional standing and walking through April 2022 due to the edema and pain in the left lower extremity and the time need for evaluation and treatment.

A medical review was completed January 13, 2023 by Dr. Bruce Myers, Board Certified in Physical Medicine and Rehabilitation and Electromyography and Musculoskeletal Ultrasonography. Based on the review of the medical documentation, Dr. Myers concluded the primary impairing diagnoses were peripheral neuropathic pain, lower extremity edema, left ankle pain, and knee pain with comorbid conditions of essential hypertension and obesity. Dr. Myers opined that from March 9, 2021 to November 15, 2021, Ms. Simmons was precluded from performing activities greater than required for activities of daily living. From November 16, 2021 forward she was not precluded from work. Supported restrictions and limitations from November 16, 2021 forward included sitting for one hour, standing and walking for ½ hour, driving for one hour at one time. In an eight hour workday she could sit for eight hours, stand and walk for an hour, drive for two hours, walk upstairs occasionally, no climbing ladders, continuous handling, grasping, manipulating, fingering and keying, occasional reaching floor to waist, occasional reaching waist to over shoulder, occasional lifting and carrying up to ten pounds, occasional pushing and pulling up to 20 pounds, occasional bending, stooping, twisting, crawling, kneeling, and squatting. The duration of these restrictions were noted to be permanent.

Mrs. Simmons claim was previously reviewed by a vocational consultant, for a Transferrable Skills Analysis based on her prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined. Transferable Skills Analysis identified occupations within Ms. Simmons physical abilities and her identified skill level to include *Customer-Complaint Service Supervisor, Order Taker Supervisor, and Customer Service*

*Representative.*

**Appeal Evaluation**

During the review of your appeal, a medical review was completed November 27, 2023 by Dr. Annie Layno-Moses, Board Certified in Physical Medicine and Rehabilitation and Pain Management. Based on the review of the medical documentation Dr. Layno-Moses concluded that the primary impairing diagnoses were left-sided plantar fasciitis and bilateral knee pain and it was further noted that Ms. Simmons was status post rupture.

Dr. Layno-Moses opined that the medical documentation supported a level of impairment with restrictions and limitations from March 8, 2023 forward. It was noted that despite Ms. Simmons reported symptoms her January 25, 2023 physical examination showed pain on palpation of the left foot, pitting edema, diminished pulses, intact strength and range of motion, moderate pain with palpation along the median band of the bilateral foot plantar fascia and no evidence of neurological deficits. She was provided knee braces to use for prolonged walking. She reported pain in her legs, back and shoulders. Her labs were documented to have an elevated ESR and CRP. Ms. Simmons was evaluated by rheumatology on April 10, 2023 due to multiple joint complaints and lab findings. She continued to endorse back pain with facet arthropathy at L4-5 and L5-S1 demonstrated on lumbar MRI and reversal of cervical lordosis revealed on cervical MRI. It was noted that Ms. Simmons did not demonstrate any physical deficits or pain reproduction related to spinal examinations. There was no clinical evidence or test to support radicular symptoms in the extremities. She had full motor strength and intact sensation. Her deficits in her lower extremities were noted to have improved since the onset of her symptoms.

Dr. Layno-Moses supported the following full-time restrictions and limitations: constant sitting, frequent standing and walking, frequent lifting, carrying, pushing, and pulling up to 30 pounds, frequent climbing stairs, balancing, stooping, and crawling, occasional kneeling, and crouching, unrestricted reaching, fine manipulation, simple and firm grasping and no climbing ladder or operating machinery. Restrictions were imposed from March 8, 2023 to May 30, 2024.

Attempts were made to reach Dr. Lang, Colleen Tran PA-C, and Dr. Vega, no contact was established.

A Vocational Assessment was completed December 4, 2023 and it was opined that the previously identified occupations continued to remain viable including *Customer-Complaint Service Supervisor, Order Taker Supervisor, Customer Service Representative, and Food and Beverage Order Clerk.*

Correspondence was sent to your office dated December 4, 2023 providing a copy of the medical and vocational assessment completed on appeal. Your office was provided 21 days or until December 24, 2023 to provide a response.

Response was received from your office noting that Ms. Simmons would not be submitting additional documentation and to resume with the appeal.

In our review of Ms. Simmons claim, The Lincoln National Life Insurance Company did fully consider the Social Security Administration's ruling to approve Social Security Disability Income benefits. It should be noted, however, that while we fully considered the Social Security Administration's ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Walmart Inc.'s Group Disability Income Policy. Moreover, The Lincoln National Life Insurance Company has obtained and considered medical and vocational assessments that were not considered by the Social Security Administration in its determination process.

**Conclusion**

We conducted a thorough and independent review of the entire claim. In summary, we acknowledge that Ms. Simmons may have continued to experience some symptoms associated with her condition beyond March 8, 2023. However, the information does not contain significant physical examination findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency, and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of her claim, our position remains that proof of her continued disability in accordance with the Policy provisions after March 8, 2023 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*

*For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:*

> *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
>
> *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

*"**Material and Substantial Duties**", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by The Lincoln National Life Insurance Company and to submit any additional information you wished to be considered as part of the appeal. The Lincoln National Life Insurance Company has conducted a full and fair review of the appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, the administrative right to review has been exhausted; no further review will be conducted by The Lincoln National Life Insurance Company and the claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to the claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Walmart, Inc.'s Group Disability Income Policy contains the below provisions:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*
2. *more than three years after the time Proof of claim is required.*

If the policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

The employer's policy has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 15, 2026.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any The Lincoln National Life Insurance Company rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by The Lincoln National Life Insurance Company are based on the provisions outlined in Walmart, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį' dóó ná'ookąąh níní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jerronda King
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 14674
Secure Fax No.: (603) 334-0401